```
 1            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF MISSOURI
 2                   WESTERN DIVISION

 3   UNITED STATES OF AMERICA,    )
                                  )
 4            Plaintiff,          ) No.  4:10-CR-00318-BCW-1
                                  )      June 19, 2013
 5            v.                  )      Kansas City, Missouri
                                  )      CRIMINAL
 6   JOSEPH CAMP,                 )
                                  )
 7            Defendant.          )

 8

 9               SENTENCING TRANSCRIPT
          BEFORE THE HONORABLE BRIAN C. WIMES
10            UNITED STATES DISTRICT JUDGE

11   Proceedings recorded by electronic voice writing
              Transcript produced by computer
12

13

14                    APPEARANCES

15   For Plaintiff:    MR. GENE PORTER
                       Assistant U.S. Attorneys
16                     400 E. 9th Street, 5th Floor
                       Kansas City, Missouri 64106
17

18
     For Defendant:    MR. JOHN PICERNO
19                     1118 McGee Street #2000
                       Kansas City, MO
20                     (816) 471-3330

21

22

23

24        Denise Catherine Halasey CCR #1257
     US Court Reporter for The Honorable Brian C. Wimes
25
                         1
```

JUNE 19TH, 2013

2                    THE COURT:  Let the Court call the case.

3     This is United States of America, plaintiff, versus Joseph

4     Camp, defendant.  Case No. 13-00207-01.  And also the

5     Court will take up Case No. 10-00318.  Let me just attempt

6     to make the record clear on what the Court is doing here

7     today.

8                    Previously, Mr. Camp appeared before this Court

9     on Case No. 10-00318-01-CRW and pled guilty on April 12th,

10    of 2013, to one Count conspiracy to commit fraud involving

11    computers in violation of 18 U.S.C.§ 371 and 18 U.S.C.§

12    1030, a Class D. felony.  The parties had brought to the

13    Court's attention that Mr. Camp had another matter that

14    was pending in New York, The Western District of New York,

15    a companion case or a case simular to this case.  We had

16    that case transferred here pursuant to Rule 20 with the

17    intent on having Mr. Camp plea to that case pursuant to a

18    plea agreement.  And then the Court would sentence

19    Mr. Camp on both 10-318 case and the 13-207 case utilizing

20    the presentence investigation report that the Court had

21    received.

22                    Let me ask Counsel, is there anything else that

23    you all would like to add or any thing the Court left that

24    you think would be helpful for the record?

25                    MR. PORTER:  No, Your Honor.  I think

                                    2

Denise C. Halasey, CCR No. 1257
Certified Court Reporter

```
 1    that's a correct summary of the procedural posture that we

 2    are in today, and what we intend to accomplish.

 3                    THE COURT:  Okay.  Thank you.  So at

 4    this point the Court will take up to plea with respect to

 5    Case No. 13-00207.

 6            Mr. Picerno, can you and your client approach

 7    the podium, please?

 8            Mr. Camp, to the best of your ability, sir,

 9    could you raise your right hand to be sworn?

10                           JOSEPH CAMP

11            Called as a witness on behalf of the COURT, was

12    duly sworn, and testified as follows:

13                    THE COURT:  Now, you do understand now,

14    that you're under oath?  Do you understand that?

15                    MR. CAMP:  Yes, sir.

16                    THE COURT:  And you understand if you

17    answer any question falsely, that answer may later be used

18    against you in the prosecution for perjury or making a

19    false statement; do you understand that, sir?

20                    MR. CAMP:  Yes, sir.

21                    THE COURT:  Mr. Picerno, if you could go

22    over what your client is pleading guilty to, and the range

23    of punishment for that?

24                    MR. PICERNO:  Judge, I think in this

25    case this is the case that has been transferred from the
```

3

```
 1   Western District of New York, here.  And he is going to

 2   plead guilty in one count to knowingly transferring,

 3   possessing, using, without authority identification of

 4   others in violation of 18 U.S.C.§ 1029 which is access

 5   device fraud.  And the unlawful possession and use of

 6   social security numbers in violation of Title 42, Section

 7   408.

 8            And the range of punishment for that offense I

 9   believe is up to five years in the Bureau of Prisons.  And

10   I think, I'm not sure, Judge, it's not on this document.

11   But I believe the supervised release is up to three years;

12   is that right?

13            MR. PORTER:  Yes.  It's in the first

14   paragraph of the proposed plea agreement that you have in

15   front of you, Judge.

16            THE COURT:  Right.

17            MR. PORTER:  A fine of $250,000 dollars,

18   a term of supervised release of not more than three years,

19   and a $100 dollar special assessment, in addition to the

20   possible sentence of five years in prison.

21            THE COURT:  Right.  Let me ask you Mr.

22   Picerno, and you've had the opportunity to go over the

23   plea agreement with Mr. Camp; is that correct?

24            MR. PICERNO:  I have.

25            THE COURT:  Okay.  Could you give to the
                              4
```

1  best of your ability kind of how this discussion took

2  place?  And the Court is really trying to establish --

3  when did you first start talking to Mr. Camp about this?

4  This plea agreement on this case?

5                    MR. PICERNO:  Probably, probably the

6  guilty plea was in April so I would say sometime in March.

7                    THE COURT:  Okay.  And let me ask this.

8  Does this plea agreement represent the entirety of your

9  understanding?

10                    MR. PICERNO:  It does, Judge.

11                    THE COURT:  And in fact, Mr. Camp, you

12  witnessed Mr. Camp sign this plea agreement, is that

13  correct, on today's date, June 19th, of 2013?

14                    MR. PICERNO:  Yes.

15                    THE COURT:  Okay.

16                    MR. PICERNO:  And specifically in

17  regards to this plea agreement, regarding the case that

18  was transferred here from New York, I probably began

19  speaking to him sometime after the guilty plea.  So it

20  would've been actually May for this particular plea

21  agreement.

22                    THE COURT:  Right.  Right.  And there

23  was a request at least for the Court to have that case

24  transferred here; is that correct?

25                    MR. PICERNO:  Yes.

5

1          THE COURT:  Okay.  Well, let me ask you,

2     Mr. Camp, have you had the opportunity to read and discuss

3     this plea agreement with your attorney?

4          MR. CAMP:  Oh, sure.  Myself and my

5     attorney in New York has spent a considerable amount of

6     time discussing this plea agreement.

7          THE COURT:  Okay.  And does this plea

8     agreement represent the entirety of the agreement that you

9     had with the government, sir?

10          MR. CAMP:  I really don't understand

11     something, sir.

12          THE COURT:  Excuse me?

13          MR. CAMP:  I don't understand something.

14     How this has gotten way off from what I expected.

15          THE COURT:  Okay.  I'm not sure the

16     Court understands.  You don't understand the terms of the

17     plea agreement?

18          MR. CAMP:  Right.  I don't understand

19     the terms of the plea agreement, the consequences of

20     pleading guilty.  Because I was told and under the

21     assumption by both of my attorneys, the New York attorney

22     and Mr. Picerno, that I was supposed to be pleading guilty

23     and ultimately the consequences for 36 months the

24     aggregate of both plea agreements, and that I have that

25     time in.  I heard five minutes ago that apparently there

6

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 6 of 32

is an additional five months because they're trying not to

2  count some time that I thought we had discussed last time

3  I was in court.  So now there seems to be some discrepancy

4  over a few months, when it was my understanding and

5  everybody I spoke to, attorneys, they've wrote me letters,

6  that I was suppose to be released after accepting this

7  plea agreement today if the Court accepted it.  Now I'm

8  being told that that is not a possibility.  And so I'm

9  getting very up -- nervous that that's not the result of

10  this.  And if that is not the result of this plea, I would

11  just assume take the plea back to New York.

12              MR. PICERNO:  And Judge, if I may?  In

13  short what he is upset about is the calculations of the

14  credit that he is going to receive for time served.  There

15  is nothing in the plea agreement that is a surprise to

16  him.  The plea agreement from New York he had in place a

17  year ago or even longer since I been representing him he's

18  been telling me that that was the plea agreement.  So the

19  plea agreement is firm.  He has already plead guilty on

20  the other case.

21              THE COURT:  Do you understand that

22  Mr. Camp, what your attorney is saying?  That the plea

23  agreement is firm?

24              MR. CAMP:  Actually, sir, this is a

25  different plea agreement than the one that I agreed to for

                              7

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 7 of 32

1    New York.  They just changed it when I came here.  I do --
                  2    I just saw this agreement today, the revised version of it
                  3    today.

                  4                 THE COURT:  In what respect do you think
                  5    that plea agreement has changed, sir?

                  6                 MR. CAMP:  Would you like to see the old
                  7    one?

                  8                 THE COURT:  No.  I'm asking you at this
                  9    point in time -- you've seem to articulate it.  What is
                 10    the change in which you said?  I don't need to see it.

                 11                 MR. CAMP:  In addition to the format
                 12    there is additional changes, such as waivers and Freedom
                 13    Information Act.  Those are all right.  Um, I'm just
                 14    seeing this for the first time today, sir.  I know that
                 15    there is waivers in here.  And I didn't agree to any
                 16    Freedom of Information Act waiver from New York.

                 17                 THE COURT:  I think that was -- and I'm
                 18    going off of my recollection, and I'll talk to counsel.  I
                 19    think that was part of the plea agreement with respect to
                 20    the plea he had in front of this Court.

                 21                 MR. PORTER:  That is correct, Your
                 22    Honor.  That is a standard provision entered in the
                 23    agreement in the Western District of Missouri.  And in the
                 24    draft that no party had signed off on that was prepared in
                 25    the Western District of New York, that provision was not

                                        8

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 8 of 32

```
1    in there, because that is apparently not something that

2    they customarily do in the Western District of New York.

3                    THE COURT:  Right.

4                    MR. PORTER:  When that draft had been

5    provided to us for the purpose of proceeding towards the

6    guilty plea.

7                    THE COURT:  Right.

8                    MR. PORTER:  The formatting of the

9    Western District of New York plea agreement was retained.

10   I think you'll notice if you'll look at it, that it is in

11   a different form than what our standard plea agreements

12   are in, in an effort to make it as close to what was

13   drafted in New York as possible.

14        The only substantive changes that were made were

15   to include the standard provisions for the waiver of the

16   defendant's ability to obtain information under the

17   Freedom of Information Act, the standard waiver of the

18   Hyde Amendment, and the standard waivers relative to being

19   able to challenge either the guilty plea or the sentence.

20   All of which are the same provisions that are used in

21   every plea agreement in this district, and were in fact

22   contained in the plea agreement that this defendant

23   entered into in Case No. 10-318.

24        That is the only way in which the agreement has

25   been changed from the draft that was provided from what
```

9

```
 1    was going on in New York.

 2                    THE COURT:  Now, you heard that Mr.

 3    Camp?

 4                    MR. CAMP:  Yes, sir.

 5                    THE COURT:  Would you agree that -- and

 6    I don't know if you had a chance to review, but those are

 7    the changes, which one you articulated with respect to the

 8    waiver.

 9                    MR. CAMP:  That's the only changes I

10    believe except for the formatting etc, was the Hyde

11    Amendment and the Freedom of Information Act waivers.  The

12    problem was I spent a considerable amount of time

13    preserving those rights and the negotiations in New York

14    such as the Freedom of Information Act and having that not

15    be included in the plea from New York -- but it's fine.  I

16    don't mind the waiver.  I have most of the material

17    anyways, and I don't plan on filing the Freedom of

18    Information Act.

19            I'm more concerned about these extra five extra

20    months that are sneaking up on me.

21                    THE COURT:  I had to address those

22    issues in which you said had been changed in the plea

23    agreement.

24                    MR. CAMP:  Right.

25                    THE COURT:  I concur with that of your
                              10
```

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 10 of 32

Counsel that other than those three things there are no

2 other substantive changes. Now, when it relates to time

3 credit doesn't have to deal necessarily with your plea.

4 That's not contained within there. And that's the point

5 that Mr. Picerno was trying to make. But the Court is

6 aware that that is your concern, and I think it was

7 addressed in the sentencing memorandum or in the

8 memorandum which I received from the government. So what

9 the Court is saying, I don't think one has to -- well, in

10 a certain respect maybe it does have to do with the other.

11 Did you want to add anything additional, Mr. Porter?

12           MR. PORTER: Your Honor, the draft that

13 was provided was useful, but not controlling or

14 determinative. Under Rule 20 once a case is transferred

15 from one district to another for the limited and sole

16 purpose of entering a plea of guilty, and that's all this

17 Court can do with the case that came here from New York.

18 Once it gets here the receiving District is in the sole

19 position of deciding what the terms of that plea agreement

20 are going to be. We didn't change anything from what

21 the -- if you will, the working agreement was, other than

22 the things that we have mentioned. There was nothing in

23 the draft that we received that made any mention of credit

24 for time served. Didn't even speak to it. And there

25 wasn't any reason to speak to it.

```
 1
```
So as you've indicated, those are separate

issues that we can take up at the proper time.

         THE COURT:  Proper time.  Right.

Because I think those are legal issues that we would have

to make that type of determination.  Am I correct?

         MR. PORTER:  I agree, Your Honor.

         THE COURT:  Okay.  Mr. Camp, so do you

understand that?  And when the Court says that, the Court

as seeing those as two different issues.

         MR. CAMP:  Yeah.

         THE COURT:  It's separate and apart,

which is a legal issue and an argument to be made at the

appropriate time.  And not necessarily with respect to

your plea.

         MR. CAMP:  I recognize that, sir.  And I

don't really care about the changes the government has

made to the plea.  But I think it is very important to

resolve the other thing before this plea is accepted.

Because I'm not going to -- I would rather not take this

plea agreement here in Missouri.  Be returned to New York

in custody where I won't be subject to any of these

additional waivers and such like that, if they are going

to keep me in custody for five additional months anyways

on the other case.  So I think there needs to be some

resolution to that issue before we can proceed with the

12

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 12 of 32

1    plea agreement for this issue.

2                    THE COURT:  Mr. Porter.

3                    MR. PORTER:  Your Honor, if we don't do

4    the plea in case 13-207 today, and we proceed simply to

5    sentencing on Case No. 10-318, the plea agreement which

6    you've already accepted will we result in the imposition

7    of the term of imprisonment of 36 months, in which Mr.

8    Camp is committed to the custody of the Bureau of Prisons.

9    Procedurally, what will happen after that is he will go

10   into BOP custody.  He won't be released.  He won't be able

11   to do anything except go into BOP custody.  The Marshals

12   will then transfer him back to the Western District of New

13   York for the purpose of resolving that case here.  Because

14   the only thing that we have the authority and jurisdiction

15   to do here is take the plea.  If he doesn't want to plead

16   guilty -- no one is going to force him, no one can make

17   him plead guilty.  The agreement is in place if he wants

18   to do it.  We think it's a good agreement.

19                    His disagreement, I guess, over the issue of

20   time served is not an issue that can be resolved by this

21   Court.  It is an issue that can only be determined in the

22   first instance by the Bureau of Prisons.  They will

23   calculate his credit for time served.  They will determine

24   what the appropriate credit is here.  No one on behalf of

25   the United States here today, no judicial representative,

                              13

yourself or otherwise, no member of the Marshal service,

no member of probation and pretrial services, can make any

representation to Mr. Camp as to how that credit for time

served is going to be calculated.  It is solely within the

prerogative of the Bureau of Prisons.  So if he wants to

not plead guilty, that's his choice.  It will result in

him going back to New York in custody.  He won't walk out

of here.  And he will in time resolve his case in New York

either by way of plea or trial.  They'll decide that once

he gets back to New York.  So it doesn't make any sense to

me to not go forward with the plea because it's simply

delaying the ability of the Bureau of Prisons to start

making those calculations as to what his credit for time

served is.

        MR. CAMP:  Why didn't someone look

already?

        THE COURT:  Mr. Picerno, do you want the

opportunity?  I don't know, Mr. Camp, how that can be made

any clearer on what this Court can do than what Mr. Porter

just stated.  Certainly, the Court is not going to accept

the plea if you're not going to make the plea, and the

Court recognizes that.  The Court will simply move forward

with the sentencing on the case in which you pled in this

Court.

        Would you like the opportunity to talk with your

14

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 14 of 32

1    attorney for a moment?  Or do you want to proceed?  You

2    instruct the Court of what your intent is, sir.

3                      MR. CAMP:  Can I speak to Mr. Picerno,

4    please?

5                      THE COURT:  Yes.

6    (THEREUPON, an off-the record discussion was had; WHEREUPON,

7    the following proceedings were had.)

8                      MR. PICERNO:  Your Honor, I think at

9    this time he just wants to lecture me, and I've listened

10   to it for a long time, and I don't care to listen to it

11   anymore.

12                     I will assure the Court that I've explained the

13   law to him repeatedly over the last one year and nine

14   months.  I have explained to him how credit for time

15   served works.  He's attempting to -- and I told him I

16   would ask the Court to grant him all the credit for time

17   served.

18                     What he doesn't understand is he can't get

19   credit on -- well, he does understand it, he is just

20   refusing to acknowledge it.  That this Court is without

21   jurisdiction to grant him credit for time served before he

22   was brought here, indicted, and made his first appearance

23   here in this Court.  Even though he was in custody in New

24   York on the other case, and I think the sentencing

25   memorandum by the government is correct, that he cannot

                                15

1  receive time credit served on the Western District of

2  Missouri's case, because there was no case until they

3  actually indicted him.  And that's the big problem.

4             THE COURT:  And that's that period of

5  time.

6             MR. PICERNO:  He wants credit for

7  those -- that's where we are at.  And he just doesn't

8  acknowledge that even if you wanted to and even if you say

9  Mr. Picerno I agree with you, I'll give him credit for

10 time served, it's not going to have any legal effect.

11            MR. PORTER:  And the reality is I

12 believe that's correct, but I haven't talked to anybody at

13 the Bureau of Prisons.  No one there has made those

14 calculations, and the only way to get to the bottom of it

15 is to get him in BOP custody, let them make the

16 calculations.  You know, he may well be right.  He may

17 have all the credit that he has -- he may have earned

18 enough credit for time served.  In which case the Bureau

19 of Prisons is going to make that calculation.  They are

20 going to then direct the Marshals where to send him.  And

21 if that means he goes to where ever he is going to be to

22 start his term of supervised release, that's where he'll

23 go.  If it means he's got a little bit of time left and

24 they want to send him to a residential placement center,

25 they can do that.  But they can't make those calculations

16

```
1    until someone is committed to their custody.  So we've got

2    to get to step one, before we can get to step three.

3                    MR. PICERNO:  I agree with that, Judge.

4                    MR. CAMP:  Don't do a plea, let's do the

5    sentencing.  I'll file a the notice of appeal for the

6    Missouri case on ineffective assistance of counsel and

7    prosecutorial misconduct.

8                    MR. PORTER:  I'm sorry.  I didn't

9    understand him, Judge.

10                    MR. CAMP:  I said there is no plea on

11   New York.  I'm just going to proceed with the sentencing

12   for New York, I mean the Missouri case.  I'll follow a

13   notice of appeal.  I have it ready.

14                    THE COURT:  You're certainly -- assuming

15   we make it through the sentencing, certainly it is your

16   right to do those things.

17                    MR. CAMP:  The problem is, Your Honor,

18   is always given guarantees.

19                    THE COURT:  Mr. Camp, okay, Mr. Camp,

20   here is where I'm going to stop you short on this.  The

21   Court doesn't guarantee.

22                    MR. CAMP:  Right.

23                    THE COURT:  The only guarantees you get

24   is the guarantees the Court said with respect to me

25   accepting the plea agreement in which was made.
```
17

| 1 | Guarantees.  No one can give guarantees.  And the Court |
| 2 | certainly -- and I am very clear of this, didn't give |
| 3 | guarantees with respect to that time period in which you |
| 4 | are referencing.  Because I cannot guarantee you that, |
| 5 | therefore, the Court would not suggest I could ever. |
| 6 | But I certainly understand your position.  And |
| 7 | what you believe with respect to that.  And so I |
| 8 | understand it, I respect it, and so what we're going to do |
| 9 | is just to move forward with your sentencing.  If you |
| 10 | choose not the plea, the Court certainly understands that |
| 11 | and we will go from here. |
| 12 | MR. CAMP:  Yes, sir.  It looks like I |
| 13 | have to go through with the Missouri case only and stay in |
| 14 | custody until I go back to New York. |
| 15 | THE COURT:  Well, I think what was |
| 16 | attempted through your attorney and I think from hearing |
| 17 | from Mr. Porter, the United States attorney, to explain to |
| 18 | you legally how that situation arises.  And that |
| 19 | ultimately the Court can't make that determination or -- |
| 20 | MR. CAMP:  -- somebody could have called |
| 21 | the BOP. |
| 22 | THE COURT:  Well, I'm talking now.  I |
| 23 | don't interrupt you, so I don't ask you to interrupt me. |
| 24 | In that ultimately the Bureau of Prisons makes that |
| 25 | determination.  And I understand what your position is |

18

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 18 of 32

1   with respect to that.  So, therefore, if you choose, and I

2   understand, it's your choice not to plea.  Than but you

3   know the circumstances as we believe them to exist with

4   respect to that.  So we'll just move forward with the

5   sentencing and we will go forward from there.

6                    MR. CAMP:  Yes, sir.

7                    THE COURT:  Let me ask you, Mr. Picerno,

8   with respect to Case No. 10-00318, you have received a

9   copy of the presentence investigation report with respect

10  to that case?

11                   MR. PICERNO:  I have, Your Honor.

12                   THE COURT:  Okay.  And have you had the

13  opportunity to go over that presentence investigation

14  report with your client?

15                   MR. PICERNO:  Yes, Your Honor.

16                   MR. CAMP:  When did we meet about that?

17                   THE COURT:  And the Court has noted at

18  least in the presentence investigation report there are no

19  noted objections to this; is that correct?

20                   MR. PICERNO:  That's correct, Judge.

21                   THE COURT:  Okay.  And Mr. Porter, I

22  take it from this report, the government doesn't have any

23  objections with respect to the presentence investigation

24  report?

25                   MR. PORTER:  Your Honor, the only thing

                              19

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 19 of 32

1    that we noted in our sentencing memorandum with respect to

2    the presentence report is the variation in the guideline

3    calculations that are proposed in the presentence report

4    versus those that are contained in the government's plea

5    agreement with this defendant.

6            In the plea agreement we agreed to recommend a

7    three-level reduction for acceptance of responsibility.

8    The presentence report takes a different view on that

9    subject and says that because of the enhancement for

10    obstruction they do not believe the defendant is entitled

11    to a reduction for acceptance of responsibility.  We're

12    asking the Court in keeping with the plea agreement terms

13    to grant that reduction for acceptance instead of

14    following the recommendation in the presentence report.

15    That means that instead of the total offense level of 24

16    as recommended in a presentence report, there would be a

17    total offense level of 21.  And we would ask the Court to

18    make that findings.  That is the only way in which there

19    is any disagreement between the government and the content

20    of the presentence report.

21            THE COURT:  Okay.

22            MR. PORTER:  And if it isn't obvious,

23    that is an issue that we are bringing to the Court's

24    attention that benefits the defendant and makes his

25    guideline range less than what is calculated in the

20

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 20 of 32

```
 1   presence report.

 2                  THE COURT:  And I appreciate that

 3   Mr. Porter, because the Court did review the government

 4   sentencing memorandum.  So I appreciate that.  It is the

 5   Court's intent to adopt in which I did in terms of the

 6   plea agreement between the parties.  Which gave a

 7   three-level reduction for acceptance.  And so the Court's

 8   intent is to grant you that three-level reduction for

 9   acceptance.  Which would make your total offense level a

10   21, your criminal history category a 4, and I believe your

11   range, your guideline range will be 57 to 71 months.  Is

12   that what Counsel?

13                  MR. PORTER:  I believe that is correct,

14   Your Honor.

15                  MR. PICERNO:  I think that is correct,

16   Judge.  Just to clarify, I did not file any objections or

17   object to that based upon the fact that he's pleading

18   guilty to 36 months.

19                  THE COURT:  That's correct.

20                  MR. PICERNO:  It didn't seem to make

21   much sense to litigate that issue.

22                  THE COURT:  Right.  And I think out of

23   an over abundance of caution, I think it's six to one,

24   half a dozen because there was an agreement which the

25   Court accept the binding with respect to the 36 months.
```

21

1  But I think it's important still for the Court to make

2  that finding and so that's why it happened so I

3  understand.

4                    MR. PORTER:  Your Honor, you're

5  absolutely right.  It ultimately becomes a moot point.

6                    THE COURT:  Right.

7                    MR. PORTER:  But since the Court is

8  required to make a guideline calculation as part of it's

9  sentencing process, that's the only reason we bring it to

10  the Court's attention.

11                    THE COURT:  Thank you.  I appreciate it.

12        Okay.  Mr. Picerno, do you have anything

13  outside, any recommendation like you had said this is a

14  binding, and the Court accepted it in terms of the

15  punishment.  Do you have anything you wish to offer?

16                    MR. PICERNO:  Judge, other than asking

17  the Court to accept the terms and conditions of the plea

18  agreement which is for a 36 months sentence.  I would ask

19  that the Court grant him time credit served for everyday

20  that he has been in custody.

21                    THE COURT:  Okay.  Anything else?

22                    MR. PICERNO:  I don't have anything to

23  add, Your Honor.

24                    THE COURT:  Okay.  Mr. Porter?

25                    MR. PORTER:  Your Honor, I think not.  I

                              22

think we've set out in our sentencing memo what we believe
the Court should do, and in fact is obligated to do by way
of not only the prison sentence but the other components
of sentence as well.

The one thing that we ask the Court to do that
was not part of the agreement in that sense it is again an
additional measure that the government is taking that
benefits the defendant is to ask you to after imposing the
$100 dollar special assessment, to invoke the provisions
of 18 U.S.C.§ 3573.  And remit the payment of that
assessment so that Mr. Camp is no longer financially
obligated to make that $100 dollar special assessment.

We've outlined for the Court why the provisions
of 3573 would support doing that.  And we are not required
to do that.  It is certainly not part of the agreement.
But again, it is something the government is doing that is
operating to the benefit of Mr. Camp.

MR. CAMP:  Your Honor, I already paid
the $100 dollar assessment fee.

MR. PORTER:  I'm sorry?

THE COURT:  Mr. Camp had indicated that
he had already paid the $100 dollar assessment fee.

MR. PORTER:  Your Honor, I wasn't aware
of that.

THE COURT:  Neither was the Court.  And
23

so that might be a moot issue, Mr. Camp.

2                    MR. PORTER:  If that's in fact true,

3    than there is no need to remit it, if it's already been

4    paid.

5                    MR. CAMP:  It should be on the record.

6    I had it sent because it was part of the plea agreement to

7    have it done before sentencing.

8                    THE COURT:  Okay.

9                    MR. CAMP:  I didn't get a receipt for

10   it, but I know that it was sent.

11                   THE COURT:  Okay.

12                   MR. CAMP:  $100 dollars isn't that much.

13                   THE COURT:  Any good reason why the

14   Court should not impose sentence at this time?

15           Hearing none, Mr. Camp, you are hereby committed

16   to the custody of the Bureau of Prisons for a period of 36

17   months on Count one.  And pursuant to the plea agreement

18   the Court will give you credit for all time served.

19           Mr. Camp, obviously you know the Court has to

20   impose a sentence that is not greater than necessary to

21   comply with the provisions of the statute 3553.  Obviously

22   the Court agreed and accepted the binding plea agreement

23   between the parties.  In doing so the Court in effect

24   believes that this sentence is one that protects the

25   public from future crimes by you, sir.  I think it will

                              24

1    add adequate deterrence from your criminal conduct in

2    those that these types of crimes in which you committed

3    will not be tolerated.

4              Now, you've indicated, sir -- well, let me say

5    this.  Upon release of imprisonment, the Court will place

6    you on supervised release for a period of one year.  The

7    Court finds that you do not have the ability to pay the

8    fine, therefore the fine is waived.  However, my

9    understanding your ordered to pay the United States a

10   special assessment of $100 dollars in which you've

11   indicated to the Court.  I have no other verification than

12   that, that you have paid that amount.  If so, than that is

13   not applicable to you.

14             It is further ordered on Counts one and two,

15   restitution in the amount of $68,153.50 is imposed.  A

16   lump sum payment of the full amount is ordered due

17   immediately.  If you are unable to pay that full amount

18   immediately, you shall make payments of at least

19   ten percent of earnings while incarcerated and monthly

20   payments of $100 or ten percent of your gross income.

21   Mr. Porter?

22             MR. PORTER:  Your Honor, I wanted to

23   call the Court's attention to the provisions of the plea

24   agreement.  We gave Mr. Camp a discount on the amount of

25   that restitution.  The plea agreement that you accepted

                                  25

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 25 of 32

```
 1    calls for imposition of the amount of restitution of only
 2    $61,500 dollars.  And so I recognize that there is a
 3    higher amount that is reflected in the presentence report,
 4    but, again, in a way in which this operated to the
 5    defendant's benefit, we in the plea agreement calculated
 6    and set forth the restitution at $61,500 dollars.  And
 7    since the Court has accepted that plea agreement, I think
 8    that is the correct restitution amount, rather than the
 9    higher amount that you referenced a moment ago that is
10    from the presentence report.
11              THE COURT:  The Court stands correct.
12    Reviewing the plea agreement on that amount it is for the
13    amount of $61,500 dollars is imposed.  And again, for the
14    record, that is due, ordered due immediately.  If you are
15    unable to pay that amount, you shall make payments, again,
16    Mr. Camp, in the amount of ten percent of earnings while
17    incarcerated and monthly payments of $100 dollars or ten
18    percent of your gross income whichever is greater while on
19    supervision.
20              Restitution shall be paid to the University of
21    Central Missouri, The Administrative Building, 208, in
22    Warrensburg, Missouri.  This restitution amount, sir,
23    shall not be affected by any restitution payments that may
24    be made by other defendants in this case.  Notwithstanding
25    any provision of this order, sir.  Further, the Government
```
26

may enforce restitution at any time. Now, pursuant to 18
U.S.C.§ 3612(g) you may be subject to delinquent and
default penalties.

Further, Mr. Camp, you shall notify within 30
the Clerk of the Court, the United States US Attorney's
office, Financial Litigation Unit, located here in this
building, sir, 400 East 9th Street, Room 5510, any change
of name, residence or mailing address, any material change
in economic circumstance that affect your ability to pay
the restitutions. All payments shall be made through the
Clerk of the Court at the United State District Court,
this address, sir.

Now, while on supervised release you shall
comply with the standard and mandatory condition that have
been adopted by this Court. And you shall also comply
with the special conditions listed in part D. of the
presentence investigation report.

Now, Mr. Camp, pursuant to 18 U.S.C.§ 3742 you
have the right to appeal what the Court has done here
today with respect to a sentence or your plea agreement
but only -- well, appeal, but only to the extent it hasn't
been waived in your plea agreement. You can also lose
your right to appeal if you don't timely file notice of
appeal.

MR. CAMP: My intentions are to file it.

27

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 27 of 32

```
 1                    THE COURT:  Okay.  Mr. Porter, you are
 2     up on your feet so I will let you go.
 3                    MR. PORTER:  Thank you, Your Honor.  In
 4     our sentencing memorandum we also asked the Court to
 5     consider imposing as an additional condition of Mr. Camp's
 6     supervised release, the condition that he not have any
 7     contact with any representative of the University of
 8     Central Missouri and not enter on to any University of
 9     Central Missouri premise during the term of his supervised
10     release.
11                    THE COURT:  I thought that was added as
12     part D.  And maybe I missed it.  I thought that was in
13     part D. of the presentence report.  Maybe I am in error.
14                    MR. PORTER:  I did not see it in the
15     presentence report, Your Honor.  That is why we brought it
16     to the Court's attention.  It is being requested by the
17     University of Central Missouri.  And they asked us to make
18     that request to the Court.  That he be ordered to have no
19     contact with any representative of the University of
20     Central Missouri and not enter on to any University of
21     Central Missouri premise during the term of his supervised
22     release.
23                    THE COURT:  Okay.  The Court will adopt
24     that condition of supervised release, and that will be a
25     condition of it.
                                  28
```

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 28 of 32

1     Now, Mr. Camp, you had indicated to the Court

2 you are going to appeal but you have to do so.  Federal

3 rules of criminal procedure require you to do so 14 days

4 after entry of judgment.  It's the Court intent to enter

5 judgment on this date.  So you have 14 days from this date

6 to do so.

7     If you are unable to pay for the cost of an

8 appeal you have the right to apply for leave to appeal in

9 forma pauperis.  Is there anything further for the record

10 from either side?

11     MR. PORTER:  Your Honor, just finally

12 for record clarification purposes only.  I know the Court

13 indicated that it was your intent to grant credit for time

14 served, but I know the Court also recognizes that you

15 don't have any authority or jurisdiction to do that.

16     THE COURT:  Ultimately, the Bureau of

17 Prisons is going make that determination on what time or

18 not, correct.

19     MR. PORTER:  Thank you.

20     THE COURT:  Okay.  Anything else, Mr.

21 Picerno?

22     MR. PICERNO:  No, Your Honor.

23     THE COURT:  Okay.

24     MR. PORTER:  One final matter, I'm

25 sorry.

29

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 29 of 32

```
 1                      THE COURT:  Is that the last final,
 2      final matter?
 3                      MR. PORTER:  Yes.  We are required under
 4      the terms of our plea agreement, Your Honor, to move to
 5      dismiss Counts two through seven, and we would so move at
 6      this time.
 7                      THE COURT:  Noted for the record.  Thank
 8      you.  Mr. Picerno or Mr. Camp?
 9                      MR. CAMP:  Can I speak?
10                      THE COURT:  Yes.
11                      MR. CAMP:  First off, it's my intention
12      or to file -- I have a copy of a notice of appeal over
13      there.  I don't really think that John does a really good
14      job.  In fact, I think he is one of the worst attorneys
15      I've ever met in my life.
16                      THE COURT:  Well, sir, let me tell you
17      if the purpose of which is you are to make some record
18      with respect to that here in Court, all the things, all
19      the reasons you set forth in your appeals, you can make
20      that record at that point in time.  So if that is what you
21      are trying to address that here, then I don't think it's
22      appropriate or proper.  And you can make those arguments
23      or whatever arguments you have with respect to your
24      appeal.
25                      MR. CAMP:  Well, that wasn't exactly my
                                   30
```

```
 1    intentions at all.

 2                    THE COURT:  Well, you focused on it.

 3                    MR. CAMP:  Yeah.

 4                    THE COURT:  What is it you want to say

 5    to the Court?  Get to it.

 6                    MR. CAMP:  What process do I need, what

 7    paperwork do I need to file the notice of appeal and the

 8    supporting paperwork in case Mr. Picerno doesn't file it

 9    for me?

10                    THE COURT:  I'm going to have you talk

11    to Mr. Picerno about that, okay, sir.  Is that the sum of

12    what you had to say to the Court?

13                    MR. CAMP:  I guess so.

14                    THE COURT:  Okay.  That will conclude

15    this hearing.

16    (THEREUPON, the following proceedings were adjourned.)

17

18                         CERTIFICATE

19         I certify that the foregoing is a correct

20    transcript from the record of the proceedings in the

21    above-entitled matter.

22
          July 13, 2013
23

24                              /s/ Denise C. Halasey
                                Denise C. Halasey, CCR
25                              U.S. Court Reporter
                              31
```

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 31 of 32

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

32

Case 4:10-cr-00318-BCW   Document 239   Filed 09/06/13   Page 32 of 32